NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                          :
JOSEPH AYRES,                             :
                                          :
            Plaintiff,                    :
                                          :
      v.                                  :      Civil No. 18:12071 (RBK)
                                          :
MAFCO WORLDWIDE CORPORATION :                    **OPINION**
d/b/a MAFCO WORLDWIDE LLC,                 :
                                          :
            Defendant.                    :
_____:

**KUGLER**, United States District Judge:

This matter is before the Court on Defendant Mafco Worldwide Corporation's motion for

partial dismissal (Doc. No. 8) of Plaintiff Joseph Ayres's Complaint (Doc. No. 1) under Federal

Rule of Civil Procedure 12(b)(6).  For the reasons below, Defendant's motion is **DENIED**.

I.      **BACKGROUND[1]**

This is a case involving alleged workplace discrimination.  Plaintiff Joseph Ayres is a 61-

year-old man.  (Compl. at ¶ 7.)  He works for Defendant Mafco Worldwide Corporation and has

for more than thirty years.  (_Id._ at ¶ 8.)  Defendant specializes in manufacturing licorice extract

and other derivatives used in various consumer products.  (_Id._ at ¶ 4.)  Relevant to Plaintiff's

allegations of discrimination and retaliation, Defendant employed the following individuals:

---

[1] On this motion to dismiss, the Court accepts as true the facts pled in the Complaint and
construes them in the light most favorable to Plaintiff.  _See Phillips v. Cty. of Allegheny_, 515
F.3d 224, 231 (3d Cir. 2008).

Mike Zdanavage, Operations Supervisor; Sean McDaniel, Operations Manager; Stan Washington, a manager; and Samantha (last name unknown), an engineer and foreman.  (*Id.* at ¶ 9.)

Plaintiff alleges that he first experienced discrimination when he applied for a "Boiler Operator" position in July of 2017.  (*Id.* at ¶ 12.)  Plaintiff worked as a bale feeder at the time.  (*Id.* at ¶ 24.)  The company advertised two separate openings and placements for Boiler Operators.  (*Id.* at ¶ 13.)  Plaintiff, as the most senior employee to apply, felt confident he would receive the promotion.  (*Id.* at ¶ 19.)  At the time of the application, Plaintiff suffered from a permanent 66-pound lifting restriction.  (*Id.* at ¶ 11.)  Nearly two years earlier, he suffered a serious work-related injury, causing various muscular tears in his arm.  (*Id.*)

Instead of hiring Plaintiff for the position, Defendant hired two individuals in their thirties, presumably with no physical restrictions.  (*Id.* at ¶ 20.)  Defendant admitted in its EEOC Position Statement that "[w]hile [Plaintiff] was the most senior applicant who applied . . . his application was denied due to the permanent lifting restriction."  (*Id.* at ¶ 16.)  In addition, Defendant stated that the reason Plaintiff was not hired was because he would not have been able to lift "chemical drums weighing up to five hundred-eighty-five pounds."  (*Id.* at ¶ 21.)  Defendant, however, made no effort to consult with Plaintiff's physicians or perform any professional assessment of Plaintiff's limitation.  (*Id.*)  Moreover, Plaintiff's disability was irrelevant to his qualifications for the Boiler Operator position.  (*Id.*)  According to James Conklin, a "well-respected boiler operator," there was "virtually no transition of chemical drums" during a Boiler Operator's night shift, and "nobody in the entire [Boiler Operators'] department lifted over fifty pounds."  (*Id.*)  After denial from the position, Plaintiff reported both age and disability discrimination to Defendant's management.  (*Id.* at ¶ 24.)

In the fall of 2017, Defendant issued Plaintiff a written disciplinary action for alleged work rule violations related to his operation of a forklift. (*Id.* at ¶ 25.) This discipline ultimately resulted in a five-day suspension. (*Id.*) Plaintiff opposed the discipline, arguing that that the damage should not have been attributed to him, and that Defendant's forklifts had numerous mechanical problems causing malfunctioning. (*Id.* at ¶ 26.) Defendant, however, upheld the discipline, and Plaintiff soon filed a complaint with OSHA in October 2017. (*Id.* at ¶¶ 27, 29.)

Following Plaintiff's complaint to OSHA, he began suffering from anxiety and depression. As a result, Plaintiff took a medical leave of absence from about October 5, 2017 to April 2018. (*Id.* at ¶ 28.) With Plaintiff on leave, OSHA performed an on-site inspection in mid-October 2017 and ultimately cited Defendant with $6,467.00 in fines and mandated corrective action. (*Id.* at ¶¶ 29, 30.)

On November 14, 2017, Plaintiff filed an EEOC charge alleging retaliation, age discrimination, disability discrimination, and other discriminatory conduct by Defendant. (EEOC Charge at 1 (Doc. No. 8, Exhibit A).) Plaintiff further alleged that he made "other verbal and written complaints of discrimination" to Defendant at this time. (Compl. at ¶ 31.) In the EEOC Charge, Plaintiff stated that he "had been passed over for jobs . . . and been wrongly disciplined" and that "younger employees had similar issues, but [they] did not receive any discipline." (*Id.* at 1.) Plaintiff also alleged that he "believe[ed] [he] was subject[ed] to retaliation . . . in that [he had] not been paid since taking leave and [had] been subject to disparate discipline and failure to promote." (*Id.* at 2.) The Charge further indicated that the latest incident of discrimination occurred on October 3, 2017. (*Id.* at 1.) Relatedly, Plaintiff did not check off the "continuing action" box. (*Id.*)

Plaintiff faced two unanticipated disciplinary actions when he returned to work in April 2018. First, Defendant immediately required him to serve the five-day suspension resulting from the September 2017 discipline. (Compl. at ¶ 33.) In addition, Defendant presented Plaintiff with discipline from October 20, 2017—when Plaintiff was on leave—due to attendance concerns. (*Id.* at ¶ 33.) The attendance concerns dated as far back as August 18, 2017. (*Id.* at ¶ 34; Pl.'s May 4, 2018 Letter to the EEOC at 3 (Doc. No. 9, Exhibit B).) (*Id.*) Plaintiff, unaware of any attendance concerns, doubted their legitimacy. (*Id.*)

In addition to speculative disciplinary actions, Plaintiff experienced negative treatment as he returned to work in the spring of 2018. (Compl. at ¶ 35.) Specifically, he described how management made negative comments to him, encouraged his early retirement, and discouraged personal vacation. (*Id.*) Relatedly, Defendant did not permit him to request off or take accumulated time off. Instead, management scrutinized his requests and even threatened him with termination. (*Id.*)

On May 4, 2018, Plaintiff faxed a letter to the EEOC titled "Ayres v. Mafco" and included the Charge number. (Pl.'s May 4, 2018 Letter to the EEOC at 1.) This letter described events related to Plaintiff's five-day suspension, attendance-related discipline, and other issues including problems with taking time off and being sent home. (*Id.* at 2–4.) Specifically, Plaintiff detailed conversations regarding his operation of the malfunctioning forklift and five-day suspension. (*Id.* at 2.) Plaintiff wrote, "Mr. Franko asked the mechanic if he drove the [fork] truck, the mechanic said yes he had. Then he asked how did the breaks work for you? He said at first they held but then they didn't." Plaintiff also wrote, "I ask[ed] Mr. Franko if he knew of anyone who hit a fire line [with a forklift and] he said yes. I then ask[ed] . . . if [that person] got a suspension [and he said no." (*Id.*) Regarding the October 20, 2017 discipline, Plaintiff wrote,

"Mr. Washington [Defendant's employee] said I have an attendance problem.  Which I knew nothing about.  On Thursday 4-26-18 [Defendant] gave me a written warning for missing time.  The dates the[y're] using go back to 8-18-17."  (*Id*. at 3.)  The EEOC then issued Plaintiff a Right to Sue letter on August 9, 2018, notifying him that he may sue Defendant based on his Charge.  (EEOC Right to Sue Letter at 1 (Doc. No. 9, Exhibit D).)

Plaintiff filed the instant action against the Defendant in the Superior Court of New Jersey, Law Division, Camden County on July 18, 2018.  (Compl.)  The Complaint asserts claims for (1) discrimination and retaliation under the New Jersey Law Against Discrimination (NJLAD); (2) discrimination and retaliation under the Age Discrimination in Employment Act (ADEA); and (3) retaliation under the Conscientious Employee Protection Act (CEPA).  (Compl. at ¶¶ 36-39.)  Defendant removed this matter to this Court on July 26, 2018.  (Notice of Removal at 1 (Doc. No. 1).)  On September 25, 2018, the Court extended pretrial discovery to February 28, 2019. (Scheduling Order (Doc. No. 11).)

Defendant now moves to dismiss (1) all claims insofar as they refer or relate to the alleged April 2018 discipline and (2) the NJLAD claim.  (Def.'s Mot. to Dismiss.)  Defendant argues that Plaintiff's claims insofar as they refer or relate to the alleged April 2018 discipline should be dismissed because Plaintiff failed to exhaust administrative remedies.  (*Id*. at 8.)  Plaintiff counters that he exhausted administrative remedies because his claims arising from the alleged April 2018 discipline are within the scope of his EEOC Charge.  (Pl.'s Br. in Opp'n at 13 (Doc. No. 9).) Defendant also argues that Plaintiff's NJLAD claim should be dismissed because it is duplicitous with and therefore waived by Plaintiff's CEPA claim.  (Def.'s Mot. to Dismiss at 5.)  Meanwhile, Plaintiff argues that the CEPA waiver does not apply because his NJLAD claim

is substantially independent and because Defendant's motion to waive is premature at the pleading stage.  (*Id*. at 8.)

## II.    STANDARD

### A.  Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing a Motion to Dismiss, a court conducts a three-part analysis.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675).  Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations," the court "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement for relief." *Id*. (quoting *Iqbal*, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III.   DISCUSSION

### A.  Plaintiff's claims arising from the April 2018 discipline

Defendant moves for dismissal of Plaintiff's claims insofar as they refer or relate to the April 2018 discipline of Plaintiff. Defendant argues that the April 2018 discipline is not included in Plaintiff's EEOC Charge and that therefore Plaintiff failed to exhaust administrative remedies and put Defendant on notice for such claims. Meanwhile, Plaintiff argues that he did exhaust administrative remedies and put Defendant on notice because the April 2018 discipline is within the scope of the EEOC Charge. Because there is no exhaustion requirement for NJLAD or CEPA claims, this Court will only analyze Plaintiff's ADEA claim. *See Fasano v. FRB*, 457 F.3d 274, 290 (3d Cir. 2006) (discussing NJLAD); *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 388 (2015) (discussing CEPA).

#### 1.   Whether Plaintiff may assert claims arising from the April 2018 discipline

Plaintiff seeks relief under the ADEA for alleged discrimination and retaliation arising in part from discipline that occurred in April 2018. A plaintiff seeking relief must first exhaust administrative remedies by filing an EEOC Charge. 29 U.S.C. § 626(d)(1)(B); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007). Plaintiff's only EEOC Charge was filed on November 14, 2017, months before the alleged April 2018 discipline occurred. (EEOC Charge at 1.) Plaintiff's Charge lists the "latest date" of discrimination as October 3, 2017, and Plaintiff did not check the "continuing action" box. (*Id.*)

The Third Circuit recognizes a modification of the exhaustion requirement. *Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985). Allegations not specifically alleged in an EEOC charge may be properly asserted in district court if they "can reasonably be expected to grow out of the initial charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 298–99 (3d Cir. 1976). A plaintiff is thus not limited to claims "checked off in the box section on the front page of the Charge, nor even to the specific claims that the EEOC investigated pursuant to the Charge." *Carr v. New Jersey*, No. 9–cv–913, 2010 WL 2539782, at *4 (D.N.J. June 17, 2010). This modification does not, however, allow a party to "greatly expand an investigation simply by alleging new and different facts when [he is] contacted by the Commission following [his] charge." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir.1978)).

The threshold question then is whether the April 2018 discipline can reasonably be expected to "grow out of" the Charge. Defendant argues that Plaintiff's EEOC Charge "did not even remotely include or relate to any alleged discipline . . . in April 2018." (Def.'s Mot. to Dismiss at 11.) Instead, Defendant claims that the Charge "only refers to the alleged suspension . . . in September 2017, which involved multiple work rule violations," and that the alleged April 2018 discipline "involved attendance concerns." (*Id.*)

Contrary to Defendant's assertion, however, Plaintiff's claims arising from the April 2018 discipline share the same grievance of retaliation and the same or similar complaints of discrimination as the EEOC Charge. The Charge alleged that Plaintiff "was subject to retaliation . . . in that [he had] not been paid since taking leave and [had] been subject to disparate discipline and failure to promote." (EEOC Charge at 2.) This Court infers that the "disparate discipline" alleged in the Charge is the September 20, 2017 discipline (the only discipline alleged in the

Complaint from prior to filing the Charge) that ultimately resulted in a five-day suspension. (Compl. at ¶ 24.) The September 20, 2017 discipline occurred after Plaintiff "expressed concerns of both age discrimination and disability discrimination to Defendant's management." (*Id.* at ¶ 25.) Similarly, the April 2018 discipline occurred in part after Plaintiff filed his Charge asserting age discrimination, disability discrimination, and retaliation and made "other verbal and written complaints of discrimination." (*Id.* at ¶ 31.) Therefore, Plaintiff's claims arising from the April 2018 discipline share the same grievance of retaliation and the same or similar complaints of discrimination as the EEOC Charge and could reasonably be expected to grow out of the Charge.

## 2. Whether Defendant had notice of claims arising from the April 2018 discipline

Defendant also contends that Plaintiff did not exhaust administrative remedies because Defendant had no notice that the alleged April 2018 discipline formed the basis for Plaintiff's potential claims. Defendant states that it had "absolutely no notice that any discipline other than the alleged September 2017 discipline . . . formed the basis for Plaintiff's potential claims . . . . until the filing of this action." (Def.'s Mot. to Dismiss at 11.) Meanwhile, Plaintiff argues that the April 2018 discipline is within the scope of Plaintiff's Charge.

The EEOC is required to serve "a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . within ten days . . . ." *See* 42 U.S.C. § 2000e–5(b); *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359–60 (1977). Defendant does not dispute that it properly received notice of Plaintiff's valid Charge. As explained above, the April 2018 discipline could reasonably be expected to grow out

of the Charge.  Plaintiff therefore provided sufficient notice of and exhausted his claims.  As

such, this Court denies Defendant's motion to dismiss Plaintiff's ADEA claim.

### B.  Plaintiff's NJLAD Claim

#### 1.  Whether Plaintiff's NJLAD claim is waived by his CEPA claim

Defendant seeks to dismiss Plaintiff's NJLAD claims on the ground that they are

duplicative and therefore waived by Plaintiff's CEPA claim.  Meanwhile, Plaintiff contends that

the CEPA waiver does not apply because his NJLAD claims are substantially independent and

because Defendant's motion to waive is premature at the pleading stage.

CEPA provides that "the institution of an action in accordance with this act shall be

deemed a waiver of the rights and remedies available under any other . . . State law . . . ."  N.J.

Stat. Ann. § 34:19–8.  The CEPA waiver is not meant to "diminish the rights, privileges, and

remedies of any employee," however, and has been applied narrowly.  *Skoorka v. Kean Univ.*,

No. 09–cv–3428, 2015 WL 3533878, at *15 (D.N.J. June 2, 2015) (quoting N.J. Stat. Ann. §

34:19–8)).  As the New Jersey Supreme Court explained, "[T]he waiver provision applies only to

those causes of action that require a finding of retaliatory conduct that is actionable under CEPA.

The waiver exception does not apply to those causes of action that are substantially independent

of the CEPA claim."  *Young v. Schering Corp.*, 141 N.J. 16, 29 (1995).

The principal issue here is whether Plaintiff's NJLAD claims are substantially

independent from his CEPA claim as to avoid waiver.  Plaintiff alleges age discrimination,

disability discrimination, and retaliation under NJLAD.  (Compl.)  Plaintiff's NJLAD claims of

age and disability discrimination assert that actions were taken against him because of his age

and/or medical restriction.  (*Id.* at ¶ 38.)  These claims simply do not require a finding of

retaliatory conduct actionable under CEPA. Therefore, this Court's analysis will focus on Plaintiff's NJLAD claims of retaliation.

This Court finds that Plaintiff's NJLAD claims of retaliation for complaints of discrimination are *not* substantially independent from his CEPA claim. Under CEPA, a plaintiff must prove that: (1) he reasonably believed that the defendant's conduct violated a law or regulation; (2) he performed whistle-blowing activity; (3) an adverse employment action has been taken against him; and (4) the whistle-blowing activity caused such adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003). Plaintiff alleges under NJLAD that he suffered adverse employment actions "in retaliation for requested accommodations . . . or for complaints of discrimination." (*See* Compl.) If Plaintiff can establish that he suffered said actions for complaints of discrimination, this would be actionable under CEPA because "'blowing the whistle' on discrimination [under NJLAD] is 'blowing the whistle' on a 'practice in violation of law [under CEPA].'" *Bowen v. Parking Auth. of Cty. of Camden*, No. 00–5765, 2003 WL 22145814, at *23 (D.N.J. Sept. 18, 2003) (citing *Sandom v. Travelers Mortg. Servs., Inc.*, 752 F. Supp. 1240, 1244 (D.N.J. 1990)). Therefore, Plaintiff's NJLAD claims of retaliation for complaints of discrimination are not substantially independent and will be waived by his CEPA claim.[2]

### 2. Whether Plaintiff's NJLAD claims may be waived at the pleading stage

Plaintiff cannot bring both his NJLAD claims of retaliation and CEPA claims of retaliation to trial. Assuming Plaintiff considers choosing between the two remedies, the parties still disagree as to when the choice must be made. Defendant asserts that Plaintiff's NJLAD

---

[2] The Court notes that Plaintiff's claims that he experienced said actions in retaliation for requested accommodations would not constitute a violation of CEPA. This claim is substantially independent as it relates to the request for accommodation and thus will not be waived.

claim was waived when he simultaneously filed a CEPA claim. Meanwhile, Plaintiff contends that Defendant's motion to waive is premature at the pleading stage and should be deferred until after discovery is complete.

CEPA provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other . . . State law . . . ." N.J. Stat. Ann. § 34:19–8.

The issue here is when the CEPA claim is "instituted," activating its waiver provision. The New Jersey Supreme Court has not yet decided on this question but has recognized that "the meaning of 'institution of action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference." *Young v. Schering Corp.*, 141 N.J. 16, 32–33 (1995). Although not binding, courts in this District have followed this view of the CEPA waiver. *See, e.g.*, *Rossi v. Vericare Mgmt.*, No. 13–cv–6884, 2016 WL 6892075, at *4, *15 (D.N.J. Nov. 22, 2016) ("Plaintiff should have the opportunity to conduct discovery . . . before he is required to make an election of remedies between his CEPA and LAD claims . . . .").

In the absence of a controlling decision from the State's highest court on this issue, this Court has broad discretion in determining when the CEPA waiver applies. Defendant cites a variety of cases, including some from this Court, in support of its argument that the CEPA waiver should be applied at the pleading stage. *See Rodriguez v. Ready Pac Produce*, No. 13–cv–4634, 2014 WL 1875261 (D.N.J. May 9, 2014); *Goldberg v. Egg Harbor Twp. Sch. Dist.*, No. 11–cv–1228, 2011 WL 5554501 (D.N.J. Nov. 14, 2011). Defendant is correct in identifying that this Court and others in this District have applied the CEPA waiver at the pleading stage. Unlike plaintiffs in several of the cases cited above, Plaintiff here asserts a defense that

Defendant's waiver argument is premature. Relatedly, Plaintiff insists that additional discovery is warranted. The Court, consistent with its discretion, will wait until discovery is complete to rule on the waiver issue. *See, e.g., Martelack v. Toys R US*, No. 13–cv–7098, 2016 WL 762656, at *6 (D.N.J. Feb. 25, 2016) (deferred until pretrial conference); *Brangan v. Ball Plastic Container Corp.*, No. 11–cv–5470, 2012 WL 1332663, at *7 (D.N.J. Apr. 17, 2012) (deferred until discovery was complete).

This Court therefore finds that Plaintiff has not waived his NJLAD claims of retaliation by simultaneously filing a CEPA claim. While Plaintiff cannot bring both his NJLAD and CEPA of retaliation claims to trial, he is permitted to wait until discovery is complete to choose between the two remedies.

## IV.    CONCLUSION

For the reasons discussed above, Defendant's motion for partial dismissal is **DENIED**.

Dated: 2/13/2019                                              s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge