IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH AYRES, | : |
| Plaintiff, | : Civil No. 18-12071 (RBK/AMD) |
| v. | : **OPINION** |
| MAFCO WORLDWIDE LLC, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the Motion (Doc. 49) of Defendant MAFCO Worldwide, LLC ("MAFCO" or "Defendant") for Summary Judgment. For the reasons expressed herein, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

  **A.  Factual History**

This is an employment discrimination case that arises from Plaintiff Joseph Ayres' employment with Defendant MAFCO. Defendant is a nationwide company headquartered in Camden, New Jersey that specializes in manufacturing licorice extract. (Doc. 49-2 ("Def. SOF") ¶2.) Plaintiff began working for MAFCO in December 1987, and remains employed there today. (*Id.* ¶3; Doc. 51-2 ("Pl. CSOF") ¶1.)

Defendant is party to a collective bargaining agreement ("CBA") with the Licorice & Paper Employees Association of Camden, New Jersey ("the Union"). (Def. SOF ¶¶4–6.) Plaintiff is a member of the Union. (*Id.* ¶4; Pl. CSOF ¶2.) The CBA dictates that, for job openings within

1

MAFCO, "seniority shall govern rights to job assignments except in situations in which the most senior man is not qualified, in which event the most senior qualified man shall have the right to the assignment." (Def. SOF ¶11.) A qualified employee within this context is defined as "an employee with the necessary skills to perform the functions of the job." (*Id.* ¶12.)

While working at MAFCO in August 2015, Plaintiff suffered a work-related injury that included tears in his arm and through his bicep. (Def. SOF ¶18; Pl. CSOF ¶13.). Following his injury, Plaintiff received workers' compensation, had surgery on his bicep, and underwent physical therapy. (Def. SOF ¶¶20–22; Pl. CSOF ¶14.) Due to the injury and subsequent care, Plaintiff was absent from work until July 2016; when he returned, his physician imposed a 66-pound lifting restriction. (*Id.*)

In July 2017, Plaintiff—then working for Defendant as a bale feeder—applied for one of the two new openings within MAFCO for the "boiler operator" position. (Def. SOF ¶¶26–27.) Defendant describes the boiler operator position as requiring the lifting and moving of 50-pound bags, as well as the moving and maneuvering by hand of chemical drums weighing between 400 and 700 pounds. (*Id.* ¶28.) These chemical drums must be moved on and off pallets into set positions on the floor. (*Id.* ¶29.) Only one boiler operator is on duty at a time to perform such tasks. (*Id.* ¶32.)

Plaintiff was the most senior employee who applied for the boiler operator openings in July 2017. (Def. SOF ¶35.) Defendant states that it removed Plaintiff from consideration for the position due to his 66-pound lifting restriction, as this restriction would interfere with his ability to safely maneuver the significantly heavier chemical drums. (*Id.* ¶39.) Defendant and Union leadership informed Plaintiff of this decision, and MAFCO then promoted the two next most senior

employees—both in their thirties—to the open boiler operator positions. (*Id.* ¶¶40–44.) Plaintiff continued working for MAFCO as a bale feeder. (*Id.*)

On September 20, 2017, Defendant issued written discipline to Plaintiff for numerous violations of company rules for forklift operation. (Def. SOF ¶46; Pl. CSOF ¶89.) Defendant alleges that Plaintiff was assigned a painting job that did not require a forklift—however, Plaintiff nonetheless used a forklift without authorization, failed to conduct a safety inspection, and in the process punctured a 250-gallon tote of licorice product, causing much of the product to spill onto the floor and be ruined. (Def. SOF ¶¶46–53; Pl. CSOF ¶¶89–93.) Defendant imposed a 5-day suspension on Plaintiff as a result of this incident. (*Id.*) Plaintiff then filed a grievance, but the suspension was ultimately upheld. (*Id.*) Claiming that the forklift malfunctioned due to Defendant's mechanical issues, Plaintiff also filed a complaint with the Occupational Safety and Health Administration ("OSHA") on October 13, 2017. (Pl. CSOF ¶¶106–107.) As an unrelated cause for discipline, Defendant notes that Plaintiff violated its attendance policy between July 12 and August 18, 2017, resulting in a written warning being prepared on October 20, 2017. (Def. SOF ¶57.)

On October 5, 2017, Plaintiff took a medical leave of absence for anxiety and depression. (Def. SOF ¶58.) On November 14, 2017, while still on leave, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 14, 2017. (Pl. CSOF ¶¶121–122; Doc. 51-5 at 8–9.) He alleged age and disability discrimination in connection with Defendant's failure to promote him, as well as retaliation in connection with the discipline he received. (*Id.*) Plaintiff returned from his medical leave in April 2018. (Def. SOF ¶58.) Immediately upon his return, he was required to serve the forklift-related 5-day suspension originally imposed upon him in September 2017, which he had not served up to this point because

3

he was on leave. (*Id.* ¶59.) At this point, Defendant also presented Plaintiff with the written attendance-related discipline from October 20, 2017. (*Id.* ¶60.)

### B. Procedural History

On July 18, 2018, Plaintiff filed suit in the Superior Court of New Jersey, alleging claims for: discrimination and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count I); discrimination, retaliation, and hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA") (Count II); and retaliation in violation of the Conscientious Employee Protection Act ("CEPA") (Count III). (Doc. 1.)

On July 26, 2018, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Doc. 1.) On August 27, 2018, it filed a partial motion to dismiss, which this Court denied on February 23, 2019. (Docs. 8, 22.) Plaintiff filed a motion to amend his complaint on May 6, 2019, which this Court denied on July 18, 2019. (Docs. 31, 44.) On January 15, 2020, Defendant filed a motion for summary judgment, which the Court addresses now. (Doc. 49.)

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh

4

evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which a jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Because this Court's jurisdiction is premised on Plaintiff's ADEA claims, the Court begins by addressing the ADEA claims, and will advance to discussion of Plaintiff's state law NJLAD and CEPA claims if necessary.

### A. ADEA Claims

"The ADEA establishes that it is unlawful for an employer 'to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age.'" *Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 104 (3d Cir. 2019) (quoting 29 U.S.C. § 623(a)(1)). The ADEA further makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2).

Plaintiff alleges several theories of age discrimination under the ADEA, including failure to promote, retaliation, and hostile work environment. (Doc. 1 ¶¶41–45; Doc. 51 ("Pl. Resp.") at 8.) Plaintiff's failure to promote and retaliation claims are both analyzed under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Gress*, 784 F. App'x at 104. Under this framework, a plaintiff must first make out a prima facie case of age discrimination; once the plaintiff meets this initial burden, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such a showing, the "plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 138 (3d Cir. 2012) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).

To establish pretext, a plaintiff "must provide enough evidence such that a factfinder could 'infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Gress*, 784 F. App'x at 104 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The plaintiff "must prove not that the illegitimate factor was the *sole* reason for the decision, but that the illegitimate factor was a *determinative* factor in the adverse employment decision." *Id.* (emphasis in original). The Third Circuit requires that, "in short, but for the protected characteristic—here, [the plaintiff's] age—[he] would not" have experienced the adverse employment action. *Id.* (internal quotations omitted).

      **i.**     **Failure to Promote**

Plaintiff's ADEA failure to promote claim alleges that Defendant refused to consider him for the boiler operator position because of his age. "When a plaintiff complains of age discrimination under the ADEA based on his employer's failure to promote him, the prima facie case requires him to show that (1) he was a member of the protected class, *i.e.*, over 40 years old; (2) he was qualified for the new position; (3) he suffered an adverse employment decision, *i.e.*, he was passed over for the desired promotion; and (4) his employer's refusal to promote him occurred under circumstances that give rise to an inference of age discrimination." *McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 162 (3d Cir. 2012) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004)).

Here, Plaintiff is over forty years old, he was not promoted to his desired position as boiler operator, and the two individuals promoted to the boiler operator openings were younger individuals. Thus, the parties dispute only whether Plaintiff was qualified for the position. Defendant argues that Plaintiff was not qualified for the boiler operator opening because his 66-pound lifting restriction prevented him from being able to maneuver the 400-pound chemical drums by hand as the position required. (Doc. 49-1 ("Def. Mot.") at 14.) Defendant alternatively argues that, even if Plaintiff could make out a prima facie case, summary judgment is nonetheless warranted because the lifting restriction was a legitimate, nondiscriminatory reason for not promoting him. (*Id.* at 17–18.)

In response, Plaintiff argues that Defendant never attempted to determine whether he could actually maneuver the drums into place despite his restriction, and thus Defendant's determination that he was "not qualified" to move the drums was not based on any objective evidence. (Pl. Resp. at 26–27.) He also argues that Defendant failed to consider the possibility of reasonable

7

accommodations—such as using mechanical assistance to move the drums—before failing to promote him.[1] (*Id*.)

Even assuming, without deciding, that Plaintiff could make out a prima facie case on his failure to promote claim, the Court finds that summary judgment is nonetheless warranted on this claim because Plaintiff cannot show that Defendant's nondiscriminatory reason was pretextual.

Defendant claims that it disqualified Plaintiff from consideration for the position because his 66-pound lifting restriction prevented him from performing the essential duties—moving or maneuvering the 400-pound drums—of a boiler operator. (Def. Mot. at 18–19.) Further, it argues that it did not actively select the younger individuals who filled the position; rather, these individuals were next in line in seniority, and it thus promoted them in accordance with the terms of the CBA with the Union. This is enough to meet Defendant's "relatively light" burden at this step. *Burton v. Teleflex Inc*., 707 F.3d 417, 426 (3d Cir. 2013).

The burden then shifts back to Plaintiff to show that Defendant's reliance on the lifting restriction was merely a pretext for age discrimination, and that his age was a determinative factor in Defendant's failure to promote him. *Gress*, 784 F. App'x at 104–105. He cannot do so. He instead appears to conflate his ADEA claim with his NJLAD disability discrimination claim, arguing that Defendant refused to hire him after a cursory glance at his physician-mandated lifting restriction, and contends that Defendant should have determined whether Plaintiff could actually maneuver the drums. (Pl. Resp. at 9–33.) While this may be an argument properly made in support of Plaintiff's NJLAD disability discrimination claim, it provides no evidence to show that Defendant's failure to promote Plaintiff was based on his age.

---

[1] Plaintiff inextricably intertwines his arguments on this point with the arguments he makes regarding his NJLAD disability discrimination claim. The Court does not address the disability discrimination arguments in depth here.

Indeed, Plaintiff's own statements throughout his brief and throughout the record suggest that he believes his lack of promotion was "solely" or "strictly" due to his lifting restriction. (Pl. Resp. at 9–11.) For example, Plaintiff states in his deposition "I was told I couldn't have the job strictly because I couldn't . . . lift any more than 66 pounds." (Doc. 51-3 at 49.) A former MAFCO employee, James Conklin, stated in a declaration that "[Plaintiff] informed me that he was denied the [boiler operator] position solely because he had a 66-pound medical restriction." (Doc. 51-4 at 6.) When asked in his deposition, "Did you tell Mr. Conklin that you were denied the position solely because you had a 66-pound medical restriction," Plaintiff answered, "Yes, sir." (Doc. 51-3 at 48.) In his brief, Plaintiff regularly emphasizes that his disability was the sole reason for his disqualification, with statements such as: "Defendant has admitted that [Plaintiff's] disability and resulting reasonable accommodations, i.e. his left-bicep injury resulting in a permanent sixty-six (66) pound lifting restriction, was the **sole reason** for failing to promote and instead disqualify him for the Boiler Operator Position in 2017." (Pl. Resp. at 10) (emphasis in original.)

When asked in his deposition to explain specifically why he believed his age entered into the boiler operator determination, Plaintiff answered that he believed "the company was trying to get rid of the older people there." (Doc. 51-3 at 49.) Plaintiff's only evidence in the record to support this claim is his allegation that a MAFCO engineer asked him, "Joe, you're not just going to get your license and go retire, after all you are 62, right?" (Doc. 51-3 at 49.) However, this engineer was not one of the decisionmakers who chose not to consider Plaintiff for the promotion.[2] Such "stray remarks by nondecisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight." *Selvanathan v. Opportunities Industrialization Centers Int'l*, 871

---

[2] By Plaintiff's own assertion, "Defendant made the decision to disqualify [Plaintiff] from consideration solely as a result of a conversation between" two higher-ranking MAFCO employees, Stan Washington and Guy Dietrich. (Pl. Resp. at 27.)

F. Supp. 2d 349, 364 (E.D. Pa. 2012) (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3d Cir. 1995)); *see also Morrissey v. Luzerne Cty. Cmty. Coll.*, 117 F. App'x 809, 814 (3d Cir. 2004) (affirming grant of summary judgment to employer on ADEA claim, finding that a factfinder could not reasonably construe the "isolated statements" the plaintiff offered to show pretext as evidence of the employer's age discrimination). As to those two individuals who were decisionmakers here, both Plaintiff and other individuals have repeatedly stated that the decision not to promote Plaintiff to boiler operator was solely based on the lifting restriction. (*See, e.g.,* Pl. CSOF ¶¶76–83; Doc. 51-3 at 48, 88–89, 129.)

Aside from this single comment, Plaintiff points to nothing in the record supporting the idea that his age was a reason for disqualification.[3] For a plaintiff to successfully oppose a summary judgment motion, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. No reasonable jury could find that the single statement Plaintiff offers is sufficient to rebut Defendant's nondiscriminatory reason for declining to promote him. *See Vuong v. Mgmt. of J.C. Penney's Co.*, 169 F. App'x 675, 677 (3d Cir. 2006) (affirming grant of summary judgment to employer on ADEA failure to promote claim where the plaintiff failed "to present anything more than broad accusations" and provided "no evidence in the form of affidavits, depositions, or otherwise" to effectively rebut the defendant's legitimate, non-discriminatory reason); *Johnson v. McGraw-Hill Companies*, 451 F. Supp. 2d 681, 696 (W.D. Pa. 2006) (granting summary judgment on ADEA claim where the plaintiff did not produce "enough evidence to allow a reasonable fact-finder to conclude that the reasons given by

---

[3] Plaintiff's statement of fact alleges that he "knew – based on Defendant's own admissions – that his age and his aforementioned disability was a part of the determination to deny him the appointment/promotion." (Pl. CSOF ¶83.) Plaintiff provides record citations in support of this claim; however, the areas he cites to address only Plaintiff's lifting restriction, and do not support his claim that Defendant admitted that his age was part of any determination.

[defendant] for his termination merely constituted a pretext for age discrimination"); *c.f., Selvanathan,* 871 F. Supp. 2d 349 (denying summary judgment on ADEA discrimination claim after finding that pretext may exist where defendant employer failed to give consistent reasons for adverse employment action, lacked documentary support, and had history of consistently making negative statements about older employees).

Accordingly, summary judgment is warranted for Defendant on the ADEA failure to promote claim.

### ii. Retaliation

"In order to establish a prima facie case of retaliation under the ADEA, a plaintiff must show that (1) [he] was engaged in a protected activity; (2) the defendant took an adverse employment action after or contemporaneous with the plaintiff's protected activity; and (3) a causal link exists between the plaintiff's protected activity and the adverse employment action." *McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 162–63 (3d Cir. 2012) (citing *Glanzman v. Metro. Mgmt. Corp*., 391 F.3d 506, 508–09 (3d Cir. 2004)). "The Third Circuit has described engaging in a protected activity as 'opposing any practice made unlawful' by the ADEA." *Selvanathan*, 871 F. Supp. 2d at 367 (quoting *Barber v. CSX Distribution Servs*., 68 F.3d 694, 702 (3d Cir. 1995)).

Here, Plaintiff claims that he engaged in the protected activity of "making complaints of discrimination and filing grievances regarding Defendant's decision to disqualify him from consideration for the Boiler Operator Position in 2017." (Pl. Resp. at 34–35.) He claims that Defendant retaliated against him for this conduct by imposing discipline, including the 5-day suspension issued in September 2017, and the October 2017 attendance-related written warning. (*Id*.) In moving for summary judgment, Defendant argues that Plaintiff did not file any grievance

relating to the boiler operator position before his 2017 discipline was issued in September and October 2017, and thus any discipline cannot possibly have been imposed in retaliation for activity that did not occur. (Doc. 52 ("Def. Reply") at 16–17.)

Contrary to Plaintiff's statement in his brief, the record is clear that Plaintiff did not file any formal grievance over Defendant's decision to disqualify him from the boiler operator position. Plaintiff points only to facts showing that he filed a formal grievance over the suspension itself. (Doc. 51-1 ¶42; Pl. CSOF ¶100; Def. SOF ¶61.) However, "a complaint need not be written or formal" to suffice as a protected activity. *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 354 (E.D. Pa. 2012). Plaintiff did make an informal complaint to the Union president, George Tobias, about being disqualified from consideration for the boiler operator position. (Pl. CSOF ¶76.)

In making this informal complaint, Plaintiff complained to Tobias that, despite his lifting restriction, he could have performed the job requirements. (*Id.*) Although Plaintiff's opposition to summary judgment asserts that this informal complaint also included his allegation that Defendant's decision was "in part due to his age," he does not point to, and the Court cannot find, anything in the record indicating that Plaintiff made any age-related complaints to Tobias during this conversation. (Pl. CSOF ¶76.) Rather, the entirety of the record, including the portions Plaintiff cites to, indicates that the complaints focused solely on Defendant's failure to determine whether Plaintiff's 66-pound lifting restriction would actually prevent him from physically maneuvering the chemical drums.[4] Further, when asked in his deposition if he had any facts supporting his contention that the discipline was based on age, Plaintiff stated that he did not. (Doc. 51-3 at 50.)

---

[4] Plaintiff refers to several portions of the record in support of his claim that the complaints to Tobias focused on age. (Pl. CSOF ¶76.) However, these parts of the record repeatedly show that the complaints focused only on Plaintiff's physical ability to perform the job, and do not include any mention of age. For example, the record details that Tobias spoke to a MAFCO employee, Stanley Washington, about Plaintiff's complaints, and told Washington only that

12

Although Plaintiff now argues that he believes age played a role in his lack of promotion, the Third Circuit has held that a complaint cannot constitute protected conduct where the plaintiff "fails to demonstrate that [he] related [his] complaints to age . . . discrimination such that the complaints could have qualified as protected activity under the anti-discrimination statutes." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015); *see also Selvanathan*, 871 F. Supp. 2d at 367 (finding that the plaintiff did not engage in ADEA protected activity where his complaints to management did not specifically allege age discrimination).

The informal complaint Plaintiff made to the Union president regarded only Plaintiff's physical ability to perform the job. As it failed to make any allegation relating to age, it is not protected conduct for purposes of an ADEA retaliation claim. *Daniels*, 776 F.3d at 195. Because Plaintiff did not engage in any ADEA-protected conduct prior to the discipline imposed, no reasonable jury could find that the discipline was retaliatory in violation of the ADEA. Accordingly, summary judgment is warranted for Defendant on Plaintiff's ADEA retaliation claim. *See Johnson v. McGraw-Hill Companies*, 451 F. Supp. 2d 681, 711 (W.D. Pa. 2006) (granting summary judgment to defendant employer where plaintiff's ADEA retaliation claim was "not supported by sufficient evidence to allow a reasonable fact-finder to conclude that he was subjected to" retaliation).

### iii. Hostile Work Environment

To state a hostile work environment claim under the ADEA, a plaintiff "must show that (1) [he] suffered intentional discrimination because of [his] age; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) the discrimination would

---

Plaintiff felt he could do the job. This conversation focused on Plaintiff's lifting restrictions, and the two individuals state that they did not discuss any complaints relating to age. (Doc. 51-3 at 89.) The record further details that Guy Dietrich, another MAFCO employee, spoke to Washington about Plaintiff's lifting restriction, but not about age. (Doc. 51-3 at 129–131.)

detrimentally affect a reasonable person in similar circumstances; and (5) the existence of respondeat superior liability." *James v. A.C. Moore Arts & Crafts Inc./Sbar's Inc.*, Civ. No. 18-063, 2019 WL 1004480, at *5 (D. Del. Mar. 1, 2019); *see also Glanzman v. Metro. Mgmt. Corp.*, 290 F.Supp.2d. 571, 581 (E.D. Pa. 2003). In analyzing a hostile work environment claim, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). No single factor is dispositive; the inquiry must focus on the totality of the circumstances. *Id*. at 451-52.

Plaintiff offers the following evidence in support of this claim: a MAFCO engineer's question regarding whether he was going to retire, a comment made during a safety meeting stating "we don't need any one-trick old ponies," and another comment from the same meeting stating "we don't need any old dogs doing the same old tricks." (Pl. CSOF ¶84.)

These three comments are insufficient to show "severe or pervasive" discrimination, as "[o]ff-hand comments and isolated incidents (unless they are extremely serious) are not sufficiently severe or pervasive to amount to discriminatory changes in the terms and conditions of employment." *James*, 2019 WL 1004480, at *5 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Although these comments may have been unwelcome to Plaintiff, "the ADEA does not endorse a cause of action for mere unpleasantness in the workplace." *Howell v. Millersville Univ. of Pennsylvania*, 283 F. Supp. 3d 309, 333 (E.D. Pa. 2017), *aff'd*, 749 F. App'x 130 (3d Cir. 2018); *see also Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 250 (3d Cir. 2012) (noting that even incidents which include an "element of intimidation . . . or insult" will

still fail to make out an ADEA hostile work environment claim if the incidents are not sufficiently severe or pervasive).

Accordingly, because Plaintiff cannot show "severe or pervasive" discrimination, his ADEA claim for hostile work environment fails, and summary judgment is warranted for Defendant on this claim as well. *See Howell*, 283 F. Supp. 3d at 333 (granting summary judgment for the defendant on the plaintiff's ADEA hostile work environment claim where the plaintiff "provide[d] no evidence that the alleged hostile environment unreasonably interfered with his work performance," and thus could not show that it was "severe or pervasive").

### B.     State Law Claims

Plaintiffs' remaining claims are brought under the NJLAD and CEPA, which are both state laws. Due to the existence of Plaintiff's ADEA claims, Defendant originally removed this case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. However, as summary judgment has been granted on Plaintiff's ADEA claims, there is no remaining federal question in this case. Therefore, the Court will remand this case to the Superior Court of New Jersey for resolution of Plaintiff's remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (authorizing remand to state court in cases where no federal claims remain).

### IV.    CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment (Doc. 49) is GRANTED IN PART only as to Plaintiff's ADEA claims, and the case will be remanded to the Superior Court of New Jersey for resolution of Plaintiff's remaining state law claims. An accompanying Order shall issue.

Dated: 7/23/2020 /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge